# In the United States Court of Federal Claims

No. 13-710 V

(Filed April 7, 2015)[1]

* * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| RAYMOND SOMOSOT and | * |
| WANWILAI SOMOSOT, on behalf of | * |
| R.D.S., a minor, | * |
| | * |
| *Petitioners*, | * |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH AND | * |
| HUMAN SERVICES, | * |
| | * |
| *Respondent*. | * |

National Childhood Vaccine
Injury Act of 1986, 42 U.S.C.
§§ 300aa-1 to -34 (2012);
Untimely Petition under 42
U.S.C. § 300aa-16(a)(2);
Review of Special Master's
Denial of Request for
Attorneys' Fees and Costs.

* * * * * * * * * * * * * * * * * * * * * *

*Lorraine J. Mansfield*, Las Vegas, NV, for petitioners.

*Lynn E. Ricciardella*, United States Department of Justice, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Rupa Bhattacharyya*, Director, *Vincent J. Matanoski*, Deputy Director, and *Gabrielle M. Fielding*, Assistant Director, Washington, DC, for respondent.

———————————————

## OPINION

———————————————

**BUSH,** *Senior Judge*.

---

[1]/ Pursuant to Rule 18(b) of Appendix B of the Rules of the United States Court of Federal Claims, this Opinion and Order was initially filed under seal on March 12, 2015. Pursuant to ¶ 4 of the ordering language, the parties were to propose redactions of the information contained therein on or before March 26, 2015. No proposed redactions were submitted to the court.

Now pending before the court is petitioners' motion for review of the special master's denial of their request for attorneys' fees and costs under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (2012) (Act or Vaccine Act). *See Somosot ex rel. R.D.S. v. Sec'y of Health & Human Servs.*, No. 13-710, 2014 WL 6536059 (Fed. Cl. Spec. Mstr. Oct. 31, 2014) (*Somosot III*).[2] The Secretary opposes the motion for review. For the reasons set forth below, the court denies petitioners' motion for review.

## BACKGROUND

### I.    Procedural Overview

Petitioners filed their petition for compensation under the Vaccine Act on September 23, 2013, alleging that their son R.D.S. developed cerebral palsy (CP) as a result of the influenza vaccination he received on December 19, 2007. The special master found that petitioners were not entitled to compensation under the Vaccine Act because their petition was untimely. *See Somosot ex rel. R.D.S. v. Sec'y of Health & Human Servs.*, No. 13-710, 2014 WL 1926491 (Fed. Cl. Spec. Mstr. Apr. 24, 2014) (*Somosot I*). This court then sustained the special master's decision denying entitlement to compensation under the Act. *See Somosot ex rel. R.D.S. v. Sec'y of Health & Human Servs.*, 118 Fed. Cl. 687 (2014) (*Somosot II*).

On September 19, 2014, petitioners filed an application for attorneys' fees and costs which the government opposed. Although respondent did not contest that the petition was brought in good faith, the Secretary argued that their claim was not supported by a reasonable basis. The special master agreed with respondent that the petition in this case lacked a reasonable basis.

The special master noted that:

> Under the Vaccine Act, a special master or a judge on the Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."

---

[2] Following the example of the parties, all page references to *Somosot III* are to the version of this opinion on the court's website, not to the version found on Westlaw.

*Somosot III*, at 7 (citing 42 U.S.C. § 300aa-15(e)(1) and *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (*Cloer III*). In particular, the special master found that "[a] review of the relevant case law and [R.D.S.'s] medical records should have alerted petitioners and their counsel that this case was untimely." *Id.* at 8. The special master therefore concluded that "there was no reasonable basis to bring this petition" and denied petitioners' request for attorneys' fees and costs. *Id.* at 9.

## II.    Factual Background

R.D.S. was born on March 15, 2007 and received an influenza vaccination during his nine-month well-baby visit on December 19, 2007. "[T]he first *symptoms* of R.D.S.'s CP occurred in 2008 or earlier." *Somosot I*, 2014 WL 1926491, at *7 (emphasis added). A *diagnosis* of CP, however, was not mentioned in R.D.S.'s medical records until May 2011. *Somosot III*, at 6. As the special master noted in *Somosot III*, five years separated the first symptoms of R.D.S.'s CP and the petition filed in this case. *Id.* at 8. The Vaccine Act requires that a petition be filed within three years of the first symptom or manifestation of onset of the alleged vaccine injury. *See* 42 U.S.C. § 300aa-16(a)(2) (stating that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury").

## DISCUSSION

## I.    Standard of Review

### A.    Three Distinct Standards of Review

This court has jurisdiction to review the decision of a special master in a Vaccine Act case. 42 U.S.C. § 300aa-12(e)(2). "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" *de Bazan v. Sec'y of Health & Human Servs.*, 539 F.3d 1347, 1350 (Fed. Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 300aa-12(e)(2)(B), and citing *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277 (Fed. Cir. 2005)). More specifically, this court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny:

3

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

*Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

### B. The Abuse of Discretion Standard Applies to the Denial of a Request for Attorneys' Fees

To withhold an award of attorneys' fees for an unsuccessful Vaccine Act petition is within the discretion of the special master. *See, e.g., Saxton ex rel. Saxton v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993) (stating that the Vaccine Act "clearly gives [the special master] discretion over whether to make [an attorneys' fees] award" in such cases). The denial of a request for attorneys' fees by a special master, therefore, is "generally reviewed for abuse of discretion." *Scanlon v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 629, 633 (2014) (citations omitted); *see, e.g., Chuisano v. United States*, 116 Fed. Cl. 276, 283-84 (2014) ("[A] special master's decision whether to award or deny attorneys' fees and costs to unsuccessful petitioners is discretionary and, thus, reviewed under an abuse of discretion standard.") (citations omitted). In the context of Vaccine Act cases, an abuse of discretion has not occurred when the special master "considered the relevant evidence, drew plausible inferences, and articulated a rational basis for [her] finding." *Masias v. Sec'y of Health & Human Servs.*, 634 F.3d 1283, 1290 (Fed. Cir. 2011).

## II. The Special Master Did Not Abuse Her Discretion in Denying Petitioners' Request for Attorneys' Fees and Costs

### A. The "Reasonable Basis" Requirement for an Award of Attorneys' Fees and Costs to an Unsuccessful Petitioner under the Act

Under the Vaccine Act, the fact that a petition for compensation is ultimately denied does not mean that the petitioner cannot be awarded attorneys' fees and costs. The governing language of the Act states that:

4

> If the judgment of the United States Court of Federal
> Claims on such a petition does not award compensation,
> the special master or court may award an amount of
> compensation to cover petitioner's reasonable attorneys'
> fees and other costs incurred in any proceeding on such
> petition if the special master or court determines that the
> petition was brought in good faith and there was a
> reasonable basis for the claim for which the petition was
> brought.

42 U.S.C. § 300aa-15(e)(1).  The two conditions for a fee award mentioned in this statutory text are that the petition was brought in good faith and that the petition had a reasonable basis.  *Id.*

In this case, the special master found that the "good faith" requirement was met by the Somosots.  *Somosot III*, at 7.  As for the requirement that a Vaccine Act petition have a reasonable basis, the special master noted that this term is not defined in the Act.  *Id.*  The special master also noted that even an untimely petition may be found to have had a reasonable basis.  *Id.* at 7-8.

## B.    The Totality of the Circumstances Test

The inquiry into whether a petition possessed a reasonable basis so as to permit an award of attorneys' fees, 42 U.S.C. § 300aa-15(e)(1), has been described as a "totality of the circumstances" test.  *See Chuisano*, 116 Fed. Cl. at 286 ("Numerous special masters, as well as this court, have held that reasonable basis is an objective standard determined by the 'totality of the circumstances.'") (citations omitted).  Under this test, any jurisdictional barriers to the petition's success, among other factors, should be considered.  *Id.* at 288.  Further, the special master may consider whether the preliminary investigation of the claim by the petitioners' attorney, before making the decision to file the petition, was reasonable in light of the circumstances.  *Id.*

## C.    Overview of Petitioners' Arguments

Petitioners present a number of arguments in their motion for review asserting that the special master's denial of their request for attorneys' fees and costs was an abuse of discretion and contrary to law.  First, they argue that their

decision to file the petition in 2013 and not earlier was reasonable in light of the complex facts in R.D.S.'s medical records.  Pet'rs' Mot. at 2.  Second, petitioners contend that the United States Supreme Court's decision in *Cloer III* is analogous to this case and compels an award of attorneys' fees here.  *Id.* at 5-6.  Third, petitioners rely upon another vaccine case, *W.C. v. Sec'y of Health & Human Servs.*, No. 07-456, 2011 WL 4537877 (Fed. Cl. Spec. Mstr. Feb. 22, 2011) (*W.C. v. HHS*), *aff'd in relevant part*, 100 Fed. Cl. 440 (2011), *aff'd*, 704 F.3d 1352 (Fed. Cir. 2013), to allege that their petition had a reasonable basis.  Pet'rs' Mot. at 7.  Finally, petitioners state that a denial of a request for attorneys' fees and costs in this case would constitute unequal treatment because less viable petitions have been afforded attorneys' fee awards under the Act.  In this regard, petitioners argue that the Vaccine Act requires that petitioners be treated equally.  *Id.* (citing *Figueroa v. Sec'y of Health & Human Servs.*, 715 F.3d 1314, 1317-18 (Fed. Cir. 2013)).  The court addresses each of these arguments in turn.

### D. The Special Master's Determination that the Petition Lacked a Reasonable Basis Survives Review

Petitioners describe the claim in their petition as "admittedly tough, but yet reasonable."  Pet'rs' Mot. at 1.  They also assert that this case was founded on "complex facts," and that this case was "firmly grounded in . . . [R.D.S.'s] medical records."  *Id.* at 1, 6.  Petitioners fail to explain, however, how the facts of this case could justify filing a petition that was clearly untimely under precedent binding on this court.  This binding precedent, as the special master noted, holds that the statute of limitations for Vaccine Act petitions runs from the date of the appearance of symptoms of the alleged vaccine injury, not from the date that the alleged vaccine injury is diagnosed.  *Somosot III*, at 3, 8; *see* 42 U.S.C. § 300aa-16(a)(2) (stating that "no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury"); *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1325 (Fed. Cir. 2011) (*en banc*) (*Cloer I*) (stating that the Vaccine Act's statute of limitations "begins to run on the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner"); *Markovich v. Sec'y of Health and Human Servs.*, 477 F.3d 1353, 1360 (Fed. Cir. 2007) (holding that the "'first symptom or manifestation of onset'" of a vaccine injury, for the purposes of 42 U.S.C. § 300aa-16(a)(2), "is the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large").  In this instance petitioners failed to file their petition within thirty-six months of the date of R.D.S.'s first symptoms of CP.

Because the special master found that the Somosots brought their petition in good faith, the fundamental question that remained to be resolved was whether petitioners' untimely Vaccine Act claim had a reasonable basis. She noted that it is indeed possible for an untimely Vaccine Act claim to have a reasonable basis. *Somosot III*, at 7-8. The special master provided two examples illustrating how an untimely claim might have a reasonable basis: (1) when precedent governing the running of the statute of limitations is unclear; and (2) when petitioners possess a reasonable belief that the first symptom of the alleged vaccine injury occurred within three years of filing their petition. Unfortunately for petitioners here, precedent regarding the statute of limitations for Vaccine Act cases was firmly established by the Federal Circuit in *Cloer I*, acting *en banc* in 2011, well in advance of the Somosots' decision to file their petition in September 2013. Thus, no lack of clarity in precedent governing the statute of limitations for the filing of a Vaccine Act petition can provide a reasonable basis for the untimely petition filed in this case.

The second scenario described by the special master, where a petitioner has a reasonable belief that the first symptom of an alleged vaccine injury occurred within three years of the filing of the petition, is not addressed by substantive argument in petitioners' motion for review. According to the special master's opinion, petitioners argued before her "that they reasonably believed R.D.S's vaccine-related symptoms began within the limitations period based upon the opinion of Dr. Wesley Robertson, R.D.S.'s pediatrician." *Somosot III*, at 8. Although it is true that in 2011 or 2013 Dr. Robertson articulated a hypothesis about vaccine injury causation that linked R.D.S.'s CP to his influenza vaccination, that commentary on causation is not relevant to the statute of limitations inquiry. *Id.* Instead, petitioners and their counsel needed to review R.D.S.'s medical records for the earliest *symptoms* of his CP. *Id.*

Petitioners have therefore failed to show that their untimely petition fits into either of the special master's illustrative examples of untimely petitions which nonetheless have a reasonable basis. Precedent as to the running of the statute of limitations was clear, and the first symptoms of CP in 2008 were clearly present in R.D.S.'s medical records. Nor have petitioners identified any other reason why their untimely petition should objectively be viewed as having had a reasonable basis.

As the special master held,

> Here, the medical records clearly demonstrate that R.D.S.
> exhibited symptoms of cerebral palsy in 2008, five years
> before the petition was filed.  Petitioners did not have a
> reasonable basis to believe that R.D.S.'s first symptom of
> cerebral palsy occurred after September 23, 2010, and
> thus did not have a reasonable basis to file the petition.
> Petitioner[s'] misunderstanding of the applicable legal
> standard relating to section 16(a)(2) (when the statute of
> limitations begins to run) does not make the filing of
> their petition reasonable.

*Somosot III*, at 8.  The petition did not have a reasonable basis because "[a] review of the relevant case law and [R.D.S.'s] medical records should have alerted petitioners and their counsel that this case was untimely." *Id.*  As summarized in the conclusion section of the special master's opinion, "there was no reasonable basis to bring this petition, based on the clearly established law that the statute of limitations begins to run on the date the first symptom or manifestation of onset occurs." *Id.* at 9 (citing 42 U.S.C. § 300aa-16(a)(2)).

The special master properly applied the "totality of the circumstances" test described in *Chuisano.  See* 116 Fed. Cl. at 286.  This untimely petition was barred by the statute of limitations, which is one factor in determining whether a petition has a reasonable basis. *Id.* at 288.  Further, there was inadequate investigation into the onset of symptoms of R.D.S.'s CP, which occurred no later than 2008. *Id.* Because the special master properly applied the "totality of the circumstances" test, *id.* at 286, and "considered the relevant evidence, drew plausible inferences, and articulated a rational basis for [her] finding," *Masias*, 634 F.3d at 1290, her finding that the petition lacked a reasonable basis was neither an abuse of discretion nor contrary to law.[3]

## E.    *Cloer III*

---

[3] Petitioners have not explained how the facts in R.D.S.'s medical records could be considered to be more complex than those in the medical records examined in *Cloer I* or *Markovich* or other Vaccine Act cases where entitlement to compensation was denied due to the running of the statute of limitations.  The court sees no abuse of discretion in the special master's finding that R.D.S.'s medical records clearly demonstrated that he exhibited symptoms of CP in 2008.

Before examining petitioners' reliance on *Cloer III*, it is helpful to give some background of that Supreme Court decision. The question of the availability of attorneys' fees and costs for untimely Vaccine Act petitions was thoroughly addressed by the United States Court of Appeals for the Federal Circuit in *Cloer v. Secretary of Health & Human Services*, 675 F.3d 1358 (Fed. Cir. 2012) (*en banc*) (*Cloer II*). The conclusion of that decision succinctly states the holding of the Federal Circuit:

> A petitioner who asserts an unsuccessful but nonfrivolous limitations claim should be *eligible* for a *determination* of whether reasonable attorneys' fees and costs incurred in proceedings related to his or her petition should be awarded. Therefore, we remand for a determination as to *whether Dr. Cloer's [untimely] petition was brought in good faith and whether the claim for which her petition was brought had a reasonable basis.*

*Cloer II*, 675 F.3d at 1364 (emphases added).

The decision of the Supreme Court affirming *Cloer II* confirms that petitioners filing untimely Vaccine Act petitions may receive an attorneys' fee award if their petitions were brought in good faith and had a reasonable basis:

> The text of the [Vaccine Act] is clear: like any other unsuccessful petition, an untimely petition brought *in good faith and with a reasonable basis* that is filed with – meaning delivered to and received by – the clerk of the Court of Federal Claims is *eligible* for an award of attorney's fees.

*Cloer III*, 133 S. Ct. at 1895 (emphases added). The concluding sentence of *Cloer III* is unambiguous:

> We hold that [a Vaccine Act] petition found to be untimely *may* qualify for an award of attorney's fees *if it is filed in good faith and there is a reasonable basis for its claim.*

*Id.* at 1896-97 (emphases added).

The fundamental problem with petitioners' reliance on *Cloer III* is that the Supreme Court did not comment on or address the question of how a special master should determine whether an untimely petition has a "reasonable basis." The only question before the Supreme Court was whether the Vaccine Act included *untimely* petitions among the unsuccessful petitions that could be eligible for an attorneys' fee award. *Cloer III*, 133 S. Ct. at 1890 ("The question before us is whether an untimely petition can garner an award of attorney's fees."); *see also* Resp't's Resp. at 12 n.4 (noting that "the issue of the reasonableness of the underlying claim was not before the Supreme Court [in *Cloer III*], and thus the Court did not address it"). Thus, there is no support in *Cloer III* for the following argument presented in petitioner's motion for review:

> The *Cloer [III]* Court found that attorney's fees and costs were awardable – the *Cloer [III]* Court considered a petition later determined to be filed after the statute of limitations had run, was reasonable. This Court should follow the ruling of *Cloer [III]*, and determine the petitioners' claims in filing the petition [in this case] were reasonable.

Pet'rs' Mot. at 5. Petitioners appear to confuse an untimely Vaccine Act petition's *eligibility* for an attorneys' fee award, which was firmly established by *Cloer III*, with the different and separate requirement that an untimely Vaccine Act petition also have a *reasonable basis*. *See* 42 U.S.C. § 300aa-15(e)(1).

Petitioners also state, without explanation, that:

> The fact situation in *Cloer [III]* is markedly similar to the case here. In both, the initial symptoms of a vaccine-related injury and of unrelated malady, add up to a reasonable basis to bring the claim, and, as in *Cloer [III]*, attorney's fees and costs are awardable to meet the mandate of the Vaccine Act.

Pet'rs' Mot. at 6. There is, however, no discussion in *Cloer III* which addresses the question of whether the untimely petition in that litigation had a reasonable basis. Nor does *Cloer III* contain any discussion of an "unrelated malady." The

court is unable to interpret *Cloer III* as "markedly similar" to the facts of this case or at all relevant to a determination of whether the untimely petition filed in this case had a "reasonable basis." The court finds petitioners' reliance on *Cloer III* to be unavailing.

### F.     *W.C. v. HHS*

Petitioners also attempt to find support for their request for attorneys' fees in *W.C. v. HHS*, another Vaccine Act case. Pet'rs' Mot. at 7. The court observes that in their motion for review only two sentences are devoted to this case, and no page references to particular passages in the *W.C. v. HHS* opinion are provided. *Id.* As respondent notes, *W.C. v. HHS* is a special master's decision denying entitlement, not a decision on a request for attorneys' fees. Resp't's Resp. at 12. Any commentary in that opinion discussing symptoms and an alleged vaccine injury is necessarily focused on the causation or significant aggravation of a medical condition, not on the question of whether the timely Vaccine Act petition filed in that case had a reasonable basis at the outset.

Thus, the court cannot agree with the argument presented in petitioners' motion for review which references *W.C. v. HHS* and cryptically states:

> The Office of Special Masters has considered another case similar to the one here discussing a petitioner who had the disease multiple sclerosis. The court noted that it was a subclinical disease and that the petitioner had a reasonable belief that the vaccine caused the symptoms.

Pet'rs' Mot. at 7 (citing generally to *W.C. v. HHS*, 2011 WL 4537877). Because *W.C. v. HHS* addresses the issue of entitlement to compensation under the Act, not the question of whether a Vaccine Act petition possessed a reasonable basis for its filing in the first instance, any citation to *W.C. v. HHS* is inapposite to the inquiry required here.

### G.     Equal Treatment

Finally, petitioners contrast the denial of attorneys' fees and costs in this case with the "inconsistent" fee awards in "each of the [Omnibus Autism Proceeding] test cases." Pet'rs' Mot. at 7 (citing Autism General Order #1, 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002)). The court notes, first, that the

Omnibus Autism Proceeding did not expand or otherwise alter the three-year window for filing a petition under the Vaccine Act. *See* Autism General Order #1, 2002 WL 31696785, at *8. The only alterations in petition processing in the Omnibus Autism Proceeding that might be relevant to this case consisted of the option of using a "short-form petition" and the option to participate in a proceeding which examined vaccine injury causation for a group of cases. *Id.* at *7-8.

None of the advantages of the Omnibus Autism Proceeding, which were adopted to confront an overwhelming wave of petition filings with similar causation disputes, would have affected the timeliness of the petition filed in this case. Here, petitioners first contacted counsel in December 2012. Pet'rs' Mot. for Fees, at 2. By that time, any Vaccine Act petition for R.D.S.'s alleged vaccine injury of CP was already untimely, because the first symptoms of R.D.S.'s CP occurred in 2008 at the latest. In other words, even if a short-form petition option and a multi-case protocol had been made available to the Somosots and their counsel, such as were offered in the Omnibus Autism Proceeding, any resulting savings of time and effort in preparing a petition would not have assisted them in filing a timely petition. Thus, even if the Somosots had been treated exactly like the autism petitioners participating in the Omnibus Autism Proceeding, their petition would still have been untimely and would still have lacked a reasonable basis.

Petitioners also allege that "[m]any of the autism cases were less viable than the instant case – many of them were untimely with poorly documented medical records." Pet'rs' Mot. at 7. The Somosots also insist that "if the autism cases had a reasonable basis, it follows that petitioners in the instant case had a reasonable basis." *Id.* It is impossible to conclude, based on these sweeping, unsubstantiated remarks, that petitioners in this case have received unequal treatment so as to violate the principle of equal treatment embodied in the Vaccine Act. It is certainly true that the Federal Circuit has held that "the Vaccine Act enshrines a principle of equal treatment for similarly situated vaccine-injured persons." *Figueroa*, 715 F.3d at 1317-18 (citing *Cloer I*, 654 F.3d at 1340). Here, however, the Somosots have not established that they were similarly situated to the autism petitioners whose related, pending claims numbered in the hundreds, or that they received unequal treatment in the denial of their request for attorneys' fees and costs. The court sees no evidence of unequal treatment of these petitioners in the special master's decision in *Somosot III*.

## CONCLUSION

For the foregoing reasons, the court finds no error in the special master's denial of petitioners' request for attorneys' fees and costs.  Accordingly, it is hereby **ORDERED** that

(1)   Petitioners' Motion for Review, filed November 23, 2014, is **DENIED**;

(2)   The special master's Decision Denying Attorneys' Fees and Costs, filed October 31, 2014, is **SUSTAINED**;

(3)   The Clerk's Office is directed to **ENTER** final judgment in accordance with the special master's decision of October 31, 2014; and

(4)   The parties shall separately **FILE** any proposed redactions to this opinion, with the text to be redacted clearly marked out or otherwise indicated in brackets, on or before **March 26, 2015**.


/s/Lynn J. Bush_____
LYNN J. BUSH
Senior Judge

13